Edwards<br>v.<br>Common-<br>wealth.

## COMMONWEALTH *versus* WILLIAM GIBBS M'NEILL.

The Court of Common Pleas has original jurisdiction to receive and enroll an estreated recognizance from the Municipal Court and issue *scire facias* upon it.

The justices of the Police Court for the city of Boston, after certifying and sending up to the Municipal Court a record of a recognizance entered into before them, certified and returned, at the suggestion of the attorney for the Commonwealth, a more extended record and statement of the facts and circumstances, as they appeared on their minutes ; and upon *scire facias* on such extended recognizance it was *held*, that this proceeding of the Police Court was not irregular, and the *scire facias* was sustained.

As the law stood previously to the Revised Statutes, upon a complaint to the justices of the Police Court that the party complained of was a dangerous and disorderly person and intended to commit an offence, the justices had authority to bind over such party to appear personally at the Municipal Court at its next session, then and there to answer to such matters and things as should be objected against him, and in the mean time to keep the peace and be of good behaviour, and to do and receive that which by the Municipal Court should be enjoined upon him, and not depart without license.

A neglect to appear *personally* at the Municipal Court, was *held* to be a forfeiture of such a recognizance.

Where a *scire facias* set out a recognizance as entered into by the defendant, whereas it was entered into by him and others jointly and *severally*, it was *held* that there was not a variance.

Where a party entered into a recognizance, with sureties, to keep the peace and to appear at the Municipal Court to answer to such things as should be objected against him, and he kept the peace but did not appear to answer to an indictment preferred against him, whereby he forfeited his recognizance, this Court, in the exercise of its discretion, reduced the forfeiture to such a sum as it would have been reasonable to require of the principal in a recognizance only to answer to the offence charged in the indictment

SCIRE FACIAS issued by the Court of Common Pleas, upon a recognizance.

Common-
wealth
*v.*
M'Neill.

At the November term 1835, of the Supreme Judicial Court, the defendant craved oyer of the supposed recogni zance and of the condition thereof, and of the indictment and proceedings mentioned in the writ of *scire facias,* and the following papers were read to him : —

1. A recognizance, stating that on January 30th, 1834, Joseph S. Jones, of North Carolina, and Thomas H. Perkins junior and Gibbs M'Neill, of Boston, personally appeared before the justices of the Police Court within and for the city of Boston, and acknowledged themselves to be severally indebted to the Commonwealth of Massachusetts, Jones, as principal, in the sum of $ 5000, and Perkins and M'Neill each, as sureties, in the sum of $ 5000. The condition of this recognizance was, " that if the said Jones shall personally appear before the Municipal Court of the city of Boston, next to be holden at said Boston, &c. on the first Monday of February next, then and there to answer to such matters and things as shall be objected against him on behalf of said Commonwealth, and in the mean time shall keep the peace and be of good behaviour towards all persons in said Commonwealth, and especially towards Robert C. Hooper of said Boston, and shall do and receive that which by said Municipal Court shall be then and there enjoined upon him, and not depart without license, then this recognizance to be void," &c.

2. A motion made to the Police Court, on February 10th, 1834, by S. D. Parker, as county attorney, suggesting that in the recognizance sent by the Police Court to the Municipal Court there was a diminution of the record of the Police Court, the recognizance not setting forth the cause of the caption, and asking that the recognizance in point of form may be amended and the cause of caption thereof appear therein in due form of law. This motion was granted, and the clerk of the Police Court was ordered to amend the recognizance by making it conformable to the record of the case.

3. The amended recognizance, which set forth, that on January 30th, 1834, Jones, Perkins and M'Neill acknowledged themselves to be severally indebted to the Commonwealth, Jones, as principal, in the sum of $ 5000, and Perkins and M'Neill, as sureties, each in the sum of $ 5000. The condi-

tion sets forth, that whereas at the Police Court holden on January 30th, 1834, Jones is brought before said court by virtue of a warrant issued by said court on the 29th of said January to answer to the Commonwealth on the complaint, under oath, of George Reed, setting forth that Reed has reason to believe, and does believe that Hooper and Jones, on the same 29th of January, at Boston, with force and arms, are dangerous and disorderly persons and regardless of human life, and that Hooper intends to challenge Jones to fight a duel with dangerous weapons, to the hazard of life, and that Jones intends to accept the challenge ; which complaint is thereupon read in open court, on the said 30th of January, to Jones, and Jones is asked whether he is guilty or not guilty of the offence charged upon him, and answers that he will not contend with the Commonwealth, which answer is received and recorded ; and it is ordered that Jones recognize, himself in the sum of $ 5000, and find sufficient surety or sureties to recognize, each in the like sum, for his personal appearance at the Municipal Court, &c., then and there to answer, &c., whereupon Jones, as principal, and Perkins and M'Neill as his sureties, offered to recognize, &c., now therefore the condition of this recognizance is such, that if Jones " shall personally appear before the Municipal Court &c. next to be holden &c. then and there to answer to such matters and things as shall be objected against him in behalf of said Commonwealth, and in the mean time keep the peace and be of good behaviour towards all persons within said Commonwealth, and more especially towards the said Robert C. Hooper, and shall do and receive that which by said Municipal Court shall be then and there enjoined upon him and not depart without license, then this recognizance to be void, otherwise to be and abide in full power and virtue." The recognizance thus amended was transmitted to the Municipal Court on February 11th, 1834, and there ordered to be filed and recorded.

4. An indictment found at the Municipal Court held on the first Monday of February, 1834, charging that Jones, on the 29th of January, 1834, at Boston, with force and arms, did accept a challenge to fight a duel with Hooper, and did then and there consent to fight in a duel with Hooper with danger-

ous weapons, &c., to the hazard of their lives, which challenge Hooper had before that time sent to Jones by message for that purpose, upon which challenge no duel did ensue within said Commonwealth, against the peace &c., and contrary to the form of the statute, &c.

The record of the Municipal Court then states, that on the first day of the February term a certain writing purporting to be a recognizance, (being the one first above described,) was sent to the Municipal Court by the Police Court and filed in the Municipal Court, and on the 11th of February, before Jones was called on his recognizance, the clerk of the Police Court, in behalf of that court, delivered to the Municipal Court a paper purporting to be the recognizance of Jones, with the cause of its caption therein set forth, (being the amended recognizance above mentioned,) and moved the court that the same might be filed and recorded as the recognizance of Jones ; that on the 21st of February, Thomas K. Davis, special attorney of Jones, filed two motions in behalf of Jones and his bail ; that the first was a motion, that the original recognizance be not defaulted, but discharged for the reasons following : —— 1. Because there are no proceedings before the Municipal Court, in which it is alleged, or can be shown, that any breach of the peace has been committed by Jones, or any other act done by him in violation of the recognizance, subsequently to the taking of the same ; — 2. Because in point of fact Jones has done no act in breach of the peace or in violation of the laws, since the entering into the recognizance ; that the second motion was, that the amended recognizance be not admitted to be filed among the records of the Municipal Court, for the reasons following : — 1. Because it is not an original and genuine document ; — 2. Because the only recognizance entered into by Jones and the sureties, was entered into on the 30th of January, and was filed among the records of the Municipal Court on the first day of the February term, and because the writing framed on or since the 10th of February was framed without previous notice thereof having been given to the parties interested ; — 3. Because the Police Court had not authority, on or after the 30th of January, to make or frame any other recognizance in the premises than the one so taken, returned

and filed on the first day of the February term ; — 4. Because the motion of the county attorney prayed for an amendment in point of form only, whereas the amended recognizance varies in matter of substance from the original one, inasmuch as it sets out certain proceedings and cause for the caption thereof, which were not in the original recognizance, and inasmuch as it alters and enlarges the penalty in respect to the sureties, and otherwise alters their undertaking. The record further states, that afterwards, on the same day, on motion of the county attorney, Jones was called on his recognizance and did not personally appear, and thereupon the county attorney moved that the recognizance of Jones be estreated, together with the record of the default in the performance of the condition thereof, and also a certified copy of the indictment, into the Court of Common Pleas, to be therein filed and entered of record, and put in suit ; and thereupon it was ordered, that the default of Jones be recorded, and that the recognizance, both in its original and in its amended form, be estreated, saving to the parties all just exceptions to the same, and the clerk was ordered, with the same, to send to the Court of Common Pleas copies of the several motions and objections before mentioned, and of all papers relating thereto, which should be desired by either of the parties ; and the documents were estreated and certified accordingly.

At April term 1834, of the Common Pleas, Jones, Perkins and M'Neill filed their caveat against the recording of the papers purporting to be recognizances.

After the oyer, M'Neill pleaded : —

1. That the sum of $ 5000 ought not to be levied of his goods, &c., because from and after the time of taking the supposed recognizance first set forth, and continually since, Jones did keep the peace and has been of good behaviour towards all persons within the Commonwealth, and especially towards Hooper.

2. That Jones, by his attorney, Thomas K. Davis, duly constituted &c., did appear at the Municipal Court, &c. according to the condition of the supposed recognizance first mentioned, and offered to answer, &c. but the court refused to hear him, said Jones, in his defence ; and that from and after

Common-<br>wealth<br>v.<br>M'Neill.

the time of entering into the supposed recognizance Jones kept the peace and was of good behaviour.

3. That the same supposed recognizance was taken and entered into before William Simmons, Esquire, one of the justices assigned to keep the peace in and for the county of Suffolk and also one of the justices of the Police Court, and was sent to the Municipal Court and duly filed therein on the 3d of February, 1834, and from and after the taking of the same, Jones kept the peace and was of good behaviour, &c. ; and that after such supposed recognizance had been returned to and filed in the Municipal Court, neither the Police Court, nor any justice thereof, had authority to make and fabricate any other instrument as and for a recognizance entered into by Jones as principal and Perkins and M'Neill as sureties, on the occasion aforesaid ; and that the writing secondly set forth on oyer as and for the original recognizance, was falsely and fraudulently made and fabricated and without the acknowledgment of M'Neill, to wit, on the 11th of February, 1834, and is not the original recognizance entered into by Jones, Perkins and M'Neill, and the same is void in law.

4. The fourth plea was similar to the third, except that it alleged that the amended recognizance was without the acknowledgment of Jones, Perkins and M'Neill.

7. That before the finding of the indictment against Jones, to wit, at the same term of the Municipal Court, an indictment was found against Hooper, charging that he, on January 29th, 1834, by written message, challenged Jones to fight a duel, and that at August term 1834 Hooper was tried and acquitted, and that the challenge alleged, in the indictment against Jones, to have been accepted by him, and the challenge alleged in the indictment against Hooper, to have been sent to Jones, are one and the same, and that the challenges alleged in the indictments to have been sent and accepted on the 29th of January, were not sent and accepted on the 30th day of January mentioned in the recognizance, nor afterwards ; and the plea avers the identity of Hooper, named in the several proceedings mentioned, and the identity of Jones, named in those proceedings ; and it then avers, that ever since the taking of the first mentioned supposed recognizance, Jones has kept the peace and been of good behaviour.

8. The eighth plea was similar to the seventh, except hat it omitted the averment that Jones had kept the peace and been of good behaviour.

To each of these pleas the county-attorney filed a special demurrer. Among the causes of demurrer assigned were the following :—

To the *first*, *seventh* and *eighth* pleas, because these pleas do not deny, but admit, the entering into and acknowledging the recognizance therein mentioned, and yet do not allege a performance of the condition thereof.

To the *first*, *second*, *third*, *fourth*, *seventh* and *eighth*, because they do not allege that Jones personally appeared before the Municipal Court, according to the tenor of the condition of the same recognizance.

To the *first*, *seventh* and *eighth*, because they do not allege that Jones was discharged by the Municipal Court ; and because they do not allege that he answered to the indictment in the Municipal Court, the same being a matter and thing objected against him in that court, on behalf of the Commonwealth.

To the *third* and *fourth*, because they make divers aver ments against the record ; and because, while they admit the existence of a record, they deny its verity.

*Parker*, (County-Attorney,) supported the demurrer. He contended, that the Police Court had authority to order the amendment of the recognizance. 4 Burn's Just. *tit. Recognizance* ; *Friend* v. *Duke of Richmond*, Hardr. 505 ; *Rex* v. *Ellames*, Cunningham (temp. Hardw.) 39 ; *Att. Gen.* v. *White*, Bunbury, 283 ; *Cogan* v. *Ebden*, 1 Burr. 383 ; 3 Morgan's Ess. 99, 103 ; Report of Commissioners to Revise the Statutes, *c.* 135, § 27 to 30, and cases there cited ; *Welch* v. *Joy*, 13 Pick. 477.

The condition of the recognizance was broken by the neglect of Jones to appear *personally* at the Municipal Court. *The Queen* v. *Lord Drummond*, 11 Mod. 200 ; *The Queen* v. *Ridpath*, 10 Mod. 152 ; *S. C.* Fortescue, 358 ; Dalton's Justice, *c.* 119, 120, 121 ; *The People* v. *Stager*, 10 Wendell, 431. He was bound to appear to answer such matters as should be objected against him on behalf of the Commonwealth ; and he

12

Common-
wealth
v.
M'Neill.

was indicted for accepting a challenge, an offence which sub
jects the party to imprisonment, and consequently requires his
personal attendance.

*Aylwin* and *T. K. Davis*, for the defendant. The recog-
nizance declared on is a *peace* recognizance, and not a recog-
nizance *ad respondendum* to any specific offence ; and there-
fore mere non-appearance is not a breach of the condition,
*Commonwealth* v. *Morey*, 8 Mass. R. 79 ; *Commonwealth* v.
*Ward*, 4 Mass. R. 497 ; 1 Hawk. *c*. 60, 61 ; 4 Bl. Comm.
255 ; 5 Burn's Justice (Chetwynd's ed.) 291 ; *Rex* v. *Benn*,
Cas. Temp. Hardw. 91. The only matters to which the
conusor is bound to answer on a peace recognizance, is a re-
newal of the complaint on which the recognizance was taken,
or a breach of the peace subsequent to the taking. 4 Inst.
180. The indictment charges the conusor with accepting the
challenge on the 29th of January, and in the seventh and eighth
pleas it is averred that it was accepted on the 29th, and by the
demurrer the Commonwealth is estopped to say that it was
accepted after that day ; but the recognizance was entered into
on the 30th, and therefore cannot apply to the offence charged
in the indictment. *William King's case*, 4 Inst. 181. There
being no subsequent offence, to which the conusor was bound
to answer, he was entitled to his discharge as a matter of right,
and therefore might appear by attorney. 1 Rolle's Ab. 289 ;
Tremaine's P. C. 270, 271 ; *The King* v. *Bacon*, Keble,
809 ; *Rex* v. *Westby*, 10 East, 86, note ; Com. Dig. *Attor-
ney, B*.

The genuine recognizance (being the one first returned to
the Municipal Court) is void on its face. The justice of the
Police Court acted in this matter as a justice of the peace, and
not as a court. The complaint sets out no offence committed,
but only an intent to commit one, and no court, as a court,
(except perhaps the Supreme Court,) has authority to put a
person under recognizance before the offence is committed.
*St.* 1783, *c*. 51 ; 34 *Edw.* 3, *c*. 1 ; *St.* 1821, *c.* 109, § 2 ; 3
*Hen.* 7, *c.* 1.

But suppose the Police Court, as a court, had power to
bind over, it could not amend the record in a criminal case,
after the term (that is, after the day of its sitting) was over.

When the recognizance was put on file as a record of the Municipal Court, it ceased to be within the control of the Police Court. Taking the recognizance and certifying it to the higher court, were ministerial acts, and when these acts were performed, the authority of the Police Court in regard to the recognizance was at an end. *Rex* v. *Darley*, 4 East, 176 ; *Rex* v. *Evett*, 9 Dowl. & Ryl. 242 ; M'Cleland, 251 ; *Glynn* v. *Thorpe*, 1 Barn. & Ald. 153 ; *Darling* v. *Hubbell*, 9 Connect. R. 350 ; *Rudd* v. *Baker*, 7 Johns. R. 549.

The original recognizance is void on the face of it, inasmuch as it does not set forth the cause of caption. *Bridge* v. *Ford*, 4 Mass. R. 643 ; *Commonwealth* v. *Downey*, 9 Mass. R. 521 ; *Commonwealth* v. *Daggett*, 16 Mass. R. 447 ; *Harrington* v. *Brown*, 7 Pick. 234 ; *Commonwealth* v. *Bail of Gordon*, 15 Pick. 193. .

The recognizance produced sets out a joint and several un dertaking by Jones and his sureties, but in the declaration the defendant alone is alleged to have entered into the recognizance. This is a fatal variance. *Ward* v. *Griffith*, 1 Ld. Raym. 84 ; *Harrington* v. *Brown*, 7 Pick. 234 ; *Cooke* v. *Graham's Admr.* 3 Cranch, 229 ; *Rex* v. *Heyward*, Cro. Car. 498.

The Court of Common Pleas has no authority to issue a *scire facias* on a peace recognizance, and consequently the writ in the present case cannot be sustained. By 3 *Hen.* 7, c. 1, a recognizance forfeited is to be certified into the Chancery, Exchequer, or King's Bench, (not into the Common Pleas,) and here the authority in such cases is vested in the Supreme Court, except that the Court of Common Pleas has jurisdiction over certain recognizances specified in *St.* 1783, c. 51, § 3, and *St.* 1810, c. 80. *Prov. St.* 11 *Will.* 3, c. 3 ; *St.* 1780, c. 17 ; *People* v. *Van Eps*, 4 Wendell, 387.

*Austin*, (Attorney-General,) replied. For the jurisdiction of the Court of Common Pleas, he relied, 1. on the invariable practice in this Commonwealth to estreat recognizances into that court ; and 2. on the ground that *debt* would lie ; whence he inferred that the proceeding on a recognizance, whether by debt or *scire facias*, was a civil action, and the Supreme Court has not original jurisdiction in civil actions except where special provision is made to that effect.

The recognizance has not been *amended*, but the Police Court, on being informed that the record had been imperfectly certified, very properly ordered it to be certified in full. They might have been compelled to do the same thing, upon a suggestion of a diminution of the record. *Commonwealth* v. *Roby*, 12 Pick. 496. But if the clerk of the Police Court is bound by his first transcript, that is evidence of a sufficient recognizance. *Commonwealth* v. *Bail of Gordon*, 15 Pick. 193. It is said that the justices of the Police Court acted as justices of the peace, in taking and returning the recognizance, but they certainly profess to act as a *court*, and the recognizance is taken by their clerk. It is not a peace recognizance, as contended on the part of the defendant. As to the nature of a recognizance, see Dalton's Just. 399, 401 ; and as to the form and manner of taking one, Dalton's Just. 430, 431, 432, 434 ; 4 Burn's Just. (20th ed.) 106, *Recognizance ; Ex parte Williams*, 8 Price, 3 ; *Rex* v. *Muilman*, Parker's Exch. Rep 241 ; *Chetley* v. *Wood*, 2 Salk. 659.

*Aug.* 27th, 1836.

SHAW C. J. delivered the opinion of the Court. This record is so voluminous, and the pleadings branch out into so many issues and causes of demurrer, that it would be difficult to give an intelligible abstract of the pleadings, without going into unnecessary minuteness of detail. The case resolves itself into two or three questions of law, the result of which will decide the case.

1. The first is, whether the Court of Common Pleas has original jurisdiction to receive and enroll an estreated recognizance from the Municipal Court, and issue *scire facias* upon it. It seemed strange that such an objection should be now taken, as it is believed to have been the universal practice for a series of years, for the Court of Common Pleas to exercise this jurisdiction, and for this Court to entertain appeals from the judgments of the Court of Common Pleas without objection ; and an instance occurred at the last term of this Court, in which a judgment was given for the Commonwealth in precisely such a case, without exception. *Commonwealth* v. *Bail of Gordon*, 15 Pick. 193. Nor are we aware of any case, in which the same jurisdiction has been claimed or exercised in any other court. A similar case was before the Court in *Johnson* v

*Randall,* 7 Mass. R. 340. It was a recognizance taken before a justice of the peace, binding the party to appear before the Municipal Court, to answer as the putative father of a bastard child. But it did not appear that it had been returned to, or recorded in that court, or by that court ordered to be estreated and sent to the Court of Common Pleas, where a *scire facias* was commenced. The Court there point out the course to be pursued, that *scire facias* must issue from the court where the recognizance is recorded, that justices taking recognizances are to return them to the court at which the principals are bound to appear, that if from the jurisdiction of that court it could not award execution upon a *scire facias,* that is, if it be a court not having jurisdiction in civil cases, it ought to certify the recognizance to some court where such execution could be awarded. The Court then cite *St.* 1783, *c.* 51, directing the Court of Sessions to certify certain recognizances to the Common Pleas, with a record of the default thereon, and for the same reason the Municipal Court ought to certify the recognizances returned there by any justice of the peace, with the default of the conusor thereon, to the Common Pleas, where it should be entered on record.

The Court, in the case cited, appear to consider the *St.* 1783, *c.* 51, § 2, as applying to all recognizances taken by justices of the peace and returnable to the Court of Sessions, whereas it applies in terms only to recognizances taken on appeals from the judgments of justices of the peace in criminal cases. But the same reason applies to other cases; and probably this provision for certifying defaulted recognizances to the Court of Common Pleas, was only in affirmance of the preëxisting law and declaratory.

But we think the jurisdiction of the Court of Common Pleas is to be sought in the statutes giving that court its general jurisdiction. Soon after the adoption of the constitution, three acts were passed on the same day, July 3d, 1783, constituting the Supreme Judicial Court, the Court of Common Pleas, and Courts of General Sessions of the Peace. These have been variously modified since, but the jurisdiction has been substantially the same. Among them, the jurisdiction of criminal and civil cases was distributed. The Court of Sessions had a lim-

ited criminal jurisdiction only.   The Court of Common Pleas
was to have cognizance of all civil actions of the value of more
than forty shillings, arising within their county, triable by com-
mon or statute law, of what nature or species soever the same
might be.   A recognizance is a debt upon condition, and on de-
fault it is forfeited and becomes a debt due.   But the remedy
is by debt or *scire facias,* which is a civil action.   As the Ses-
sions have no jurisdiction in matters of debt, the common pro-
cess of estreat, or certificate into the Court of Common Pleas,
which has that jurisdiction, seems to be the proper course, and
falls within the general principle, that where a court is consti-
tuted with general jurisdiction over a subject or class of sub-
jects, it is vested by necessary implication, if not in terms, with
power to grant and use all necessary, usual and proper process,
applicable to like cases, to carry that jurisdiction into execu-
tion.   This conclusion is greatly strengthened by what we deem
to have been the practice, not only ever since the passage of
these .acts, but long before, under the provincial acts, contain-
ing substantially the same provisions, of which the statutes cited
were revisions.

2.  Much of the argument has turned upon another objection
to the regularity of these proceedings, arising from the fact,
that the justices of the Police Court before whom this recogni-
zance was taken, after certifying and sending up one record of
the recognizance, afterwards, on suggestion in writing by the
attorney for the Commonwealth, certified and returned a fuller
and more extended record, and statement of the facts and cir-
cumstances, as they appeared on their minutes.

The Court are of opinion, that this constitutes no valid ob-
jection to the regularity of the proceedings, and the record as
more fully and particularly stated is properly before the Court.
The suggestion under which such fuller record was returned,
is immaterial ; had the justices, from any source, ascertained
that they had sent an imperfect record, they would have been
at liberty, within a reasonable time, to have sent a more per-
fect one.

It is a well known practice with most courts to keep a dock-
et, or short minutes of the proceedings, from which the compe-
tent and responsible officer will make up his records afterwards.

If in doing this, in the first instance, material errors or omissions occur, he may, under his responsibility, having the proper *data* before him, correct them.

In *Rex* v. *Barker*, 1 East, 186, it was held, that where a magistrate had given out a copy of a conviction, and afterwards, after a *certiorari* had been issued, he returned a more full, perfect and complete conviction, it was open to no legal objection. Lord *Kenyon* stated it as his opinion, that it was not only legal but laudable for the magistrate to do as he had done, and he would have done wrong, if he had acted otherwise. And the Court recognized the practice of magistrates, of taking minutes of their proceedings to serve as memoranda for a more formal statement to be returned to the Sessions.

The two papers produced in the present case are not incon sistent with each other ; the difference is, that one is a fuller statement of the transactions than the other, and being consistent with the truth of the case, which must be taken as true, and returned at the term to which it was returnable, it is to be taken as a valid recognizance.

3. The next question is, whether this recognizance was forfeited by failure of the principal to appear personally, at the Municipal Court, at which he was bound by this recognizance to appear. The condition of the recognizance is express, not merely to keep the peace and be of good behaviour, but to appear at the Municipal Court at the time named, to answer to such things as should be objected against him, in behalf of the Commonwealth, and to do and receive that which by such court should be enjoined upon him and not depart without license. As the Municipal Court has jurisdiction of many high crimes and offences, to which a party can only answer by a personal appearance, it follows of course that by force of this condition, the principal was bound to appear personally, if the recognizance was well taken. This resolves the case into two questions, first, whether the justices of the Police Court, had lawful authority to require and take a recognizance in such a case as that stated in the body of the recognizance ; and second, whether it was taken in a right and proper form, that is, whether they had power to bind the principal to appear and answer, as well as to keep the peace and be of good behaviour.

Common-
wealth
*v.*
M'Neill.

By *St.* 1821, *c.* 109, § 3, the justices of the Police Court are to have all the powers and perform all the duties of justices of the peace.

The general powers of justices of the peace in criminal cases are set forth in *St.* 1783, *c.* 51, the provisions of which are mainly revisions of former acts, and in affirmance of the common law. They are, among other things, to cause to be stayed and arrested all affrayers, rioters, disturbers and breakers of the peace, and bind them by recognizance to appear at the next Supreme Judicial Court or Court of General Sessions of the Peace, (for which the Municipal Court was afterwards substituted in the town of Boston, *St.* 1799, *c.* 81,) and also to require such person to find sureties for keeping the peace and being of good behaviour, until the sitting of the court. They are also to require sureties for the good behaviour, of dangerous and disorderly persons. This last provision is substantially like the provision of 34 *Edw.* 3, *c.* 1, (4 Bl. Comm. 256,) authorizing justices " to bind to the good behaviour all them *that be not of good fame,*" language somewhat broader and more indefinite than that of our statute. And so it has been considered here. 5 Dane's Abr. 301. The only doubt which could arise, on the first branch of the authority, to stay all affrayers &c., is whether it is confined to those who are complained of and charged as being actually guilty or suspected to have been guilty of affrays, riots, or disturbances or breach of the peace, or whether it can reasonably be held to extend to those who are complained of as manifesting a preparation or disposition, or having an intention to commit any of these offences. These provisions being in affirmance of the former law, and the general policy of the law, in requiring sureties of the peace and good behaviour, being rather for the prevention than the punishment of offences, where words in a statute are doubtful, the construction ought to be such as seems most consistent with that object. The later statute, that of 1794, *c.* 26, seems more explicit to this point. By this act justices of the peace are authorized to cause to be stayed all affrayers, rioters, &c., or such others as *may utter any menaces or threatening speeches,* and upon view, confession or other legal conviction of any such offence, shall require of the offender to find sureties for his

keeping the peace and being of good behaviour, and for want Common-
thereof to commit to prison.    The Revised Statutes have been wealth
passed since this recognizance was taken, and therefore are only M'Neill.
to be looked to for a rule upon this subject so far as they are
declaratory and in explanation of the preëxisting law.   In this
particular they are explicit, and authorize the binding to keep
the peace where it shall appear that there is just cause to fear,
that any such offence may be committed, that is, an offence
against the person or property of another.    Revised Stat.
*c.* 134, § 3.   We are strongly inclined to the opinion, that by the
first clause of *St.* 1783, *c.* 51, justices of the peace had power
to bind over to keep the peace those who are complained of as
having a present intent to commit a breach of the peace, as
well as those who are charged with having committed such an
offence ; but whether it be so or not, we are all of opinion,
that under the latter clause authorizing them to require sureties
for the good behaviour of *dangerous* and *disorderly* persons,
they might bind over upon a complaint setting forth, as in the
present case, that the complainant has cause to believe, that
the person intends to commit a known and flagrant offence, and
so is a dangerous and disorderly person ; and this is proved by
a *nolo contendere,* which is equivalent to an admission of the
fact, by the party charged.

As to the second point, whether the recognizance is proper-
ly taken, to appear at the Municipal Court and keep the peace
&c., we are of opinion that as the law then stood, though now
altered, if the justices had power to bind over, they had au-
thority to bind the party to appear at the next session of the
Municipal Court, and in the mean time to keep the peace, and
be of good behaviour.

This subject is much discussed and the earlier authorities
cited in *Willes* v. *Bridger,* 2 Barn. & Ald. 278.   In that case it
was contended, that it was not within the power of justices to
bind over to keep the peace for any particular term of time, but
that they were authorized to bind over only to the next Court
of Sessions.    The court decided, that when a justice of the
peace acts under his general authority as a magistrate, and not
under a writ of *supplicavit,* it is in his discretion to bind over
for a certain length of time, or to the next sessions, though it

was conceded that to bind over to the next sessions was the more usual and regular course, and most consistent with the ease and security of the subject.  The court, after citing authorities tending to show that justices may bind over for a certain length of time, add, " although they all say (the text writers) the safer course is to take the security for appearing at the next sessions, and for keeping the peace in the mean time ; thus referring it to the sessions to take a fresh security if articles be exhibited, or to try the party if an indictment be preferred."

In this Commonwealth it seems to have been settled, that where the justice has power to bind over at all, it must be to the next sessions, and in two cases, the recognizances were held void, where the binding over was for a certain time, and not to appear at the next session.  *Commonwealth* v. *Ward*, 4 Mass. R. 497 ; *Commonwealth* v. *Morey*, 8 Mass. R. 78. The same result may be drawn from the course of legislation on the subject.

By the Revised Statutes, c. 134, § 4, it is provided, that when one is bound to keep the peace, it may be for such a term of time as the magistrate may order, not exceeding six months, but he shall not be bound over to the next court, unless he is also charged with some other offence, for which he ought to be held to answer at such court.  This statute renders general and makes perpetual, a recent act, *St.* 1833, *c.* 63, providing that after the 31st of March then next, on a person being brought before a justice of the peace on articles of the peace, the justice should be authorized to require sureties, for a fixed time not exceeding six months ; and after this act went into opera tion the justice was not to bind over to appear at the next court, unless such person should also be guilty, or reasonably suspect ed to be guilty, of an offence demanding the cognizance of said court, in which case the said justice should be authorized as theretofore, in binding over such person, for his appearance at said court, and to require of him sureties of the peace and for his good behaviour in the mean time.

This act recognizes the law to have heretofore been, that when justices did bind over, it was to appear at the next term of the court, and in the mean time to keep the peace and be of good behaviour.  The act itself did not extend to this re-

cognizance, even if the complaint of George Reed, on which it was founded, was to be considered as an exhibition of articles of the peace, because it did not go into operation till after this recognizance was taken, and also because by § 3 it is expressly provided that it should not extend to the county of Suffolk. Until the revised statute therefore made it general, it had no operation in this county.

The Court are therefore of opinion, that the justices of the Police Court were authorized to bind over Jones the principal, as a dangerous and disorderly person, upon the grounds stated in the complaint before them and verified by the admission implied in a *nolo contendere*, and that they were authorized to bind him to appear at the next term of the Municipal Court. Being so bound to appear and answer, we are of opinion, as well from the terms of the condition of the recognizance, as from the nature of the obligation, and on the authorities and practice, that he was bound to appear personally, and to remain until discharged, and that default of personal appearance was a forfeiture of the recognizance. *Rix* v. *Ridpath*, 10 Mod. 152 ; *S. C.* Fortescue's Rep. 358 ; *People* v. *Stager*, 10 Wendell, 431.

4. An objection was taken to the recognizance on the ground of variance, that the *scire facias* sets out a recognizance by the defendant only, whereas it was given by him and others. On reference to the recognizance, it appears that the parties were severally bound and therefore it was a several recognizance by each ; though as all were joined in one recognizance, they might have been proceeded against jointly.

*Recognizance adjudged forfeited.*

A similar judgment was entered upon a *scire facias* against Perkins, the other surety in the recognizance.

At March term 1837, the sureties were heard upon their petition, supported by affidavits, to have the penalty of the recognizance remitted.

*Aylwin* and *Gardiner*, for the petitioners.

*Austin*, (Attorney-General,) for the Commonwealth.

PUTNAM J. By the statute of 1810, *c.* 80, this Court is

*[margin: Commonwealth v. M'Neill]*

*[margin: April 7th, 1837.]*

*[margin: April 8th]*

authorized to remit either the whole or any part of the penalty of any recognizance, taken or entered into in criminal prosecutions either by principal or sureties, when the forfeiture, breach or non-performance shall be found in this court ; and we are to render judgment for the Commonwealth according to the circumstances of the case and the situation of the party, upon such terms and conditions as shall seem to us to be reasonable and just.

By the statute of 1804, *c.* 123, § 4, the offence described in the indictment against Jones is punishable by imprisonment in the common jail, not exceeding one year, and by disqualification from holding any office or place of honor, profit or trust under this Commonwealth for five years ; and by the Revised Stat. c. 125, § 7, such offence is punishable by imprisonment in the county jail not more than one year, or by fine not exceeding 500 dollars, and by incapacity of holding or of being elected or appointed to any place of honor, profit or trust under the constitution or laws of this Commonwealth for the term of five years.

Jones did not appear at the Municipal Court according to his recognizance, and upon the pleadings in this case the recognizance has been declared to have been forfeited. And the question now is, whether the penalty in the recognizance shall be remitted in part or in whole, on the petition of the sureties.

It is proved to our satisfaction, that soon after the entering into the recognizance, Jones departed from this Commonwealth and returned to North Carolina, where he belonged, and there was no evidence produced that he was guilty of any breach of the peace of this Commonwealth after he entered into the recognizance. The challenge was accepted on the day before the date of the recognizance, as appears from the indictment.

It has been proved to our satisfaction, that Jones has little or no property, but that he lived in Boston expensively, in a style becoming gentlemen of considerable fortune ; and this circumstance has been urged by the sureties (who were ignorant of his pecuniary embarrassments and want of property) as a reason why they should be relieved ; but to that circumstance we give little if any weight.

He was arrested as a dangerous individual, who was justly

suspected of having a design to violate the law against duel-ling.

The design of the recognizance was twofold. The first and greatest object was, undoubtedly, to preserve the peace of the Commonwealth. In that respect it was to be regarded as a peace recognizance. The second was, that Jones should appear at the Municipal Court, to answer to any matters and things which should be objected against him in behalf of the Commonwealth.

In regard to the first object, it does not appear that he violated his recognizance. There has been no evidence that he committed any breach of the peace of the Commonwealth after he gave his obligation to keep the peace here.

We do not think, under the circumstances, that the amount of the penal sum was too large. Taking into consideration the rank and mode of living, and the associates and connexions of Jones, it seems to us that the police justices did not demand excessive bail. The intent was to preserve the peace, and to prevent the commission of a great offence in this State ; and if we had evidence that a duel had been fought in the Commonwealth, in violation of the condition of the recognizance, and that Jones immediately afterwards absconded, we should not feel inclined to interfere on behalf of his sureties. We are not judicially to take notice of any thing which public rumor or report states to have taken place between Jones and Hooper in another State, for the peace of this Commonwealth was not violated by any thing which was done without our jurisdiction. The legislature have not made it an indictable offence to go from any part or place in this Commonwealth towards another place or State without this jurisdiction, with intent to fight a duel. If such a provision had existed, and the recognizance had been violated in that respect, we should not feel at liberty to interfere.

But we think it reasonable and just, to take into consideration the fact, that so far as the recognizance related to the keeping of the peace of this Commonwealth, there has been no forfeiture. The breach consisted in Jones's not appearing to meet the charges which might be alleged against him, of a criminal character, at the then next Municipal Court. He has

violated that engagement, and his sureties must answer for his default.

It has been strenuously argued for them, that they supposed this was a mere peace recognizance. If it were so, it would make no difference. They were bound to know the law touching their undertaking. We think they are bound, under the circumstances, to answer just as if a separate recognizance had been given for Jones's appearance to answer for the offence of accepting a challenge to fight a duel. It is no excuse that it was not proved that they had knowledge of the particular charge. They knew that he was under arrest as a dangerous man, regardless of human life, and when they undertook that their principal should appear to answer to all such matters and things as should be objected, they must be responsible surely for all such matters and things as had any relation to or connexion with the duel, which it was feared would take place. We cannot permit sureties to come into court, under these circumstances, and defend themselves on the ground of their misconception of the extent of their legal liability.

The case, we think, is reasonably to be regarded just as it would be if the recognizance had been for the appearance of their principal to answer to the offence of accepting a challenge in this Commonwealth to fight a duel. The law regards that, as a great crime, and punishes it with severity.

We are satisfied that the penalty should be reduced to a sum, which, under the circumstances, it would have been reasonable to have required of the principal, to answer for that offence.

And we all think that $ 1000 would have been a reasonable penalty in such a recognizance. The Court is to be governed in such cases as are now under consideration, by a sound legal discretion, having regard to the declared will of the legislature. There are very few offences in the statute book which are punished by disqualification from all offices of trust, and the Court, upon conviction, would have had no discretionary power to inflict or omit that punishment. It is positively required. We know not judicially whether or not the government would have been able to prove the alleged offence; but we do know judicially, that Jones did not appear to take his trial. And we do not perceive any good reason why we should remit any part

of the sum, which would have been reasonably required in a recognizance to answer for the particular offence for which the principal stands indicted.

Common-
wealth
*v.*
M‘Neil.

The opinion of the Court is, that judgment shall be rendered for the Commonwealth in the sum of $1000, and that the rest of the penalty be remitted.